UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

WAYNE JONATHAN SPEAKS,

                          Plaintiff,

                -against-

C.O. SAEED, SHIELD #2544, and
COUNTY OF NASSAU,

                     Defendants.

--------------------------------------------------------------------X

For Online Publication Only

**FILED**
**CLERK**

4:11 pm, Feb 23, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM AND ORDER**
14-CV-06826 (JMA) (AYS)

**APPEARANCES:**

Wayne Jonathan Speaks
     *Pro Se Plaintiff*

Liora M. Ben-Sorek
Deputy County Attorney
One West Street
Mineola, New York 11501
     *Attorney for Defendants, C.O. Saeed, County of Nassau*

**AZRACK, United States District Judge:**

Plaintiff Wayne Jonathan Speaks ("plaintiff") has commenced this pro se civil rights action

under 42 U.S.C § 1983 ("Section 1983") for violation of his constitutional rights under the First

and Fourteenth Amendments during his confinement in the Nassau County Correctional Center

("NCCC").  (ECF No. 1.)  Currently before the Court is defendants, the County of Nassau ("Nassau

County") and Correction Officer Saeed ("C.O. Saeed") (together "defendants")' motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons

set forth below, the Court grants defendants' motion.

# I. BACKGROUND

## A. **Factual Background**[1]

The facts in this case, unless otherwise noted, are undisputed.  Plaintiff was detained at the NCCC on July 30, 2012 and remained there until his transfer to the custody of the New York State Department of Corrections and Community Services on January 23, 2015.  (Pl.'s Opp. at 1; Pl. Dep. 17:4-24.)[2]  Plaintiff was represented by counsel from the time of his arraignment until December 17, 2013, first by a privately retained attorney, and subsequently by a court-appointed attorney.  (Pl. Dep. 20:7-23.)  While represented by counsel, plaintiff was offered, but rejected a plea of a thirteen-year sentence.  (Id. 21:13-22:10.)  When plaintiff terminated his court-appointed attorney's services to proceed pro se, the court appointed an attorney-advisor to assist him.  (Id. 22:21-23:7, 71:13-17.)

According to plaintiff, the inmates at NCCC were generally allowed one hour each week in the law library.  (Id. 26:6-13.)  Plaintiff claims that at five pre-trial appearances between July 31, 2013 and July 22, 2014 he requested additional time in the law library which County Court Judge Jerald Carter ("Judge Carter") granted as refenced in handwritten notations on five securing

---

[1] The facts set forth in this section are taken from defendants' unopposed Local Rule 56.1 Statement ("Defs. 56.1 Stmt."), ECF No. 64-1; the declaration and exhibits submitted in support of the instant motion, including the transcript of plaintiff's deposition (Declaration of Liora M. Ben-Sorek ("Ben-Sorek Decl."), Plaintiff's Deposition, Oct. 14, 2020 ("Pl. Dep."), Ex. C, ECF No. 64-6; and plaintiff's exhibits submitted in opposition to the instant motion, ECF No. 65-1-65-11.  Plaintiff has not submitted a sworn affidavit in opposition to defendants' motion for summary judgment.

Because plaintiff's Complaint is unsigned, the allegations contained therein are not admissible evidence and cannot be considered on summary judgment.  Nevertheless, in an abundance of caution, the Court has still included relevant allegations from the Complaint in this background section and addresses any potentially relevant factual allegations from the Complaint in the Court's ultimate analysis.  As discussed infra, even if the Court considered the factual allegations in plaintiff's Complaint as admissible evidence, he has not raised material factual disputes that necessitate a trial.

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

orders.[3]  (Id. 28:20-32:3, 33:7-12; Ben-Sorek Decl., securing orders, Ex. D.)  The parties dispute whether or not these notations constitute "court orders," and further dispute the amount of time allotted to plaintiff at the law library.  The securing orders are dated as follows and include the following handwritten notations: July 31, 2013 —"*Additional law library time.*"; December 17, 2013 —"Please allow [Defendant] access to Law Library consistent with safety & security"; March 11, 2014 —"*Additional law library time-[defendant] is pro se preparing for trial.* Judge's chambers to contact NCCC per law library issue"; June 24, 2014 —"Please allow deft. 2 hours of law library time daily"; July 22, 2014 —"Deft. allowed 4 hours law library time."  (Ex. D.)

The crux of plaintiff's complaint is that C.O. Saeed, who, according to plaintiff, ran the law library, was denying him additional time in the library in violation of his right to access the courts.  (Compl.; Pl. Dep. 13:5-14:13; 42:20.)  Though plaintiff testified that he was receiving his housing unit's weekly one-hour session of library time, he was not getting the additional time he signed up for.[4]  (Pl. Dep. 38:13-39:15-25.)  In this regard, plaintiff filed six grievances—on November 26, 2013, December 7, 2013, January 13, 2014, March 3, 2014, May 19, 2014, and July 9, 2014.  (Pl. Dep. 47:23-25, 48:2-24, grievances, Pl. Dep., Ex. A at 103-108.)  He claims that C.O. Saeed issued him disciplinary infractions in retaliation for plaintiff's grievances and in an effort to impede his access there.  (Compl. at 8.)

Specifically, on August 30, 2013, while on his way to the law library, plaintiff had an encounter with C.O. Saeed resulting in a disciplinary ticket for talking in line and insolence for which he pled guilty.  (Compl. at 5; Ben-Sorek Decl., Ex. E.)  As a result of this disciplinary

---

[3] A securing order is a directive indicating defendant's remand to custody and the date of his next scheduled court appearance.  (Defs. 56.1 Stmt. ¶ 7.)

[4] Plaintiff testified that he kept track of his library hours in a pad which was lost when he was transferred to upstate prison. (Pl. Dep. 36:25-37:25.)  During discovery, defendants were unable to locate the library logbooks.  (Pl. Ex. J10).

infraction, plaintiff, who was represented by counsel at the time, received sixteen days of lock-in which he accepted without appeal.  (Ex. E.)  At his deposition, plaintiff denied that he was talking while on line, but admitted that he called C.O. Saeed "an asshole."  (Pl. Dep. 43:18-44:3.)  Additionally, plaintiff testified that at the time he was in lock-in, he was aware that he could have made a written request for library materials to be brought to his cell.  (Pl. Dep. 45:5-9.)   He testified that the NCCC "don't have the proper staff for that," but admitted that he never made any such requests.  (Id. 45:5-10, 46:9-12.)

On November 26, 2013, plaintiff filed a grievance claiming that he had been signing up for daily access to the law library but was not receiving this additional "court-ordered" time.  (Pl. Dep., Ex. A at 103.)  After being informed that his grievance did not contain the relevant dates, plaintiff refiled his grievance on December 7, 2013 noting the specific dates that he was not called to the library.  (Id. at 104; Compl. at 6.)   Grievance responded that they had not located a court order stating that plaintiff was granted additional time in the law library.  (Id.)  Plaintiff testified that in December 2013, when he requested additional law library time, C.O. Saeed told him, "I will call you if I feel like it." (Pl. Dep. 44:14-21.)  He filed another grievance on January 13, 2014 and received a similar response to his December 2013 grievance, namely that Grievance was unable to locate a court order.  (Pl. Dep., Ex. A at 105.)

With the assistance of his legal advisor, plaintiff filed another grievance on March 3, 2014 attaching a securing order from Judge Carter dated July 31, 2013.  (Pl. Dep., Ex. A at 106.)  Grievance responded that "[t]he rehabilitation unit has been notified of a securing order to allow extra law library time to the grievant consistent with safety security and [ ] working orders of the facility."  (Id.)  Plaintiff claims that when he appeared before Judge Carter on March 28, 2014, he complained that he was still not receiving additional time in the law library.  (Compl. at 6.)

4

Plaintiff alleges that on March 29, 2014, he was informed by a prison official that he would receive twenty additional hours of law library time each week which would be broken up into two, two-hour sessions for five days each week.  (Id. at 7.)  Plaintiff claims that he received this additional time for approximately one and a half months.  (Id.)  On May 19, 2014, plaintiff filed another grievance claiming that "either the housing officers or the law library officers were obstructing" the court's order of twenty additional hours of time in the law library.  (Id.; Pl. Dep., Ex. A at 107.)  Grievance deemed his grievance non-grievable finding that plaintiff failed to include specific dates for which he claimed he was obstructed access to the law library.  (Pl. Dep., Ex. A at 107.)

On June 5, 2014, plaintiff complained to C.O. Saeed that he was not getting his additional two-hour period in the law library.  (Compl. at 7-8.)  Allegedly, C.O. Saeed responded, "that's right because you are not going to [ ] come down here when you want," and that he "don't give a dam[n] about a court order."  (Compl. at 8.)  On June 17, 2014, as alleged, plaintiff received a "false disciplinary report" by Officer Saeed for conversing with another inmate in the library instead of doing legal work.  (Id.; Ben-Sorek Decl., Ex. F.)  He claims that he "was found guilty of disorderly conduct and refusing to obey a direct order."  (Compl. at 8.)  According to the misbehavior report—which sets out C.O. Saeed's allegations against plaintiff—plaintiff was communicating with an inmate through the window in the law library and C.O. Saeed observed plaintiff "motion with his hands" and "point[] to the door" and to a third inmate who was sitting beside him."  (Ex. F at 2.)  Subsequently, the inmate plaintiff had been communicating with slid an envelope under the door.  (Id.)  C.O. Saeed confiscated the envelope and "order[ed] everyone out of the law library to deal with the situation."  (Id.)  However, plaintiff "initiall[y refused] several orders to leave the area and kept asking what did he do" and only complied after "the

[thir]d order." (Id.)  Following a hearing, plaintiff was found guilty of refusing to obey a direct order, and was given seventeen days of lock-in.  (Id.)  Plaintiff's appeal was denied on July 10, 2014.  (Id.)  At his deposition, plaintiff admitted that he did, in fact, "point[ ]" to the other inmate and told him, "you know, tell [C.O. Saeed] to let you come on this side and you can probably tell me what you need to tell me." (Pl. Dep. 66:2, 67:9-11.)  At his deposition, plaintiff did not dispute that he disobeyed C.O. Saeed's first two orders and no admissible evidence in the record contradicts C.O. Saeed's account of plaintiff's disregard of those orders.

On June 24, 2014, at an appearance before Judge Carter, plaintiff complained that he was not getting his additional hours in the law library and that he received a false disciplinary report in retaliation for filing a grievance.  (Compl. at 8.)  On July 9, 2014, plaintiff filed another grievance claiming that "Officer Saeed has been blocking my hours by calling me late and making me leave early, or not calling me for a period, saying I refuse."  (Pl. Dep., Ex. A at 108.)

Plaintiff claims that the "last known incident in the law library occurred on July 31, 2014" when he received a disciplinary report from Correction Officer Condell ("C.O. Condell"), C.O. Saeed's partner, for disorderly conduct and refusal to obey a direct order.  (Compl. at 4; Pl. Ex. F6 at 6.)   Following a hearing, plaintiff's appeal was denied on August 20, 2014 and he received twelve days of lock-in.  (Pl. Ex. F6 at 7.)

Prior to trial, plaintiff's case was transferred to the Honorable Judge Meryl J. Berkowitz ("Judge Berkowitz"). (Pl. Dep. 63:9-64:2, 19:11-12.)  Plaintiff testified that he never discussed the issue of additional time in the law library with Judge Berkowitz or any of the other judges that handled his criminal case.  (Id. at 18:2-21, 58:20-60:13.)  During plaintiff's November 2014 trial before Judge Berkowitz, pro se plaintiff negotiated a nine-year sentence plea agreement; he did not appeal his conviction.  (Id. 64:3-14.)

The evidence in the record does not identify any specific instances where plaintiff was denied law library access after his July 22, 2014 appearance before Judge Carter.  (Compl. at 9.)

## B.  Procedural History

On November 17, 2014, pro se, incarcerated plaintiff filed the instant Complaint against C.O. Saeed, Nassau County, Sheriff Michael Sposato ("Sposato") and the Nassau County Sheriff Department, Division of Corrections ("the Prison") pursuant to Section 1983.  (See Compl.)  On July 30, 2015, pursuant to Federal Rule of Procedure 41(a)(2), the Court granted plaintiff's motion to dismiss the Complaint with respect to defendants Sposato and the Prison.  (ECF No. 23.)  On July 7, 2021, the remaining defendants, C.O. Saeed and Nassau County filed the instant motion for summary judgment (ECF No. 64) which plaintiff opposes. (ECF No. 65.)

## II. DISCUSSION

## A.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'"  Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. . . ." Marvel Characters, 310 F.3d at 286 (citing Matsushita, 475 U.S. at 587; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)). To defeat a properly supported motion for summary judgment, "the non[-]moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Unless the non-moving party produces "significant probative evidence" demonstrating that a factual dispute exists, summary judgment is appropriate. Anderson, 477 U.S. at 249.

Additionally, "[a] pro se party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a pro se plaintiff's claims are subject to a final dismissal." Ferguson v. Bizzario, No. 09-CV-8106, 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2010). Nevertheless, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (plaintiff "may not rely on conclusory allegations or unsubstantiated speculation"); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 147 n.2 (2d Cir. 1984) ("[A] mere allegation in [a] pleading [is] insufficient to defeat a summary judgment motion.") (internal quotation marks omitted).

**B.** **Local Rule 56.1 Statements**

As an initial matter, defendants argue that the facts set forth in their Statement of Material Facts pursuant to Local Civil Rule 56.1(c) should be deemed admitted because plaintiff failed to submit a response as required by Rule 56.1.  (Defs. Reply, ECF No. 66 at 5.)

Local Civil Rule 56.1 requires any motion for summary judgment to be accompanied by a statement of material facts itemized into numbered paragraphs followed by a citation to the evidence in support of those facts that would be admissible.  Local Civ. R. 56.1(a) & (d).  Pursuant to subsection (c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civ. R. 56.1(c).  "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."  T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).

Here, defendants properly filed a Rule 56.1 statement along with the notice required by Local Rule 56.2 providing a pro se party specific instructions regarding how to respond.  Plaintiff failed to submit a responsive statement, which would permit the Court to deem all of the proffered facts admitted.  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may instead "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a [Rule 56.1] statement."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (cleaned up).  In light of plaintiff's pro se status, and in the exercise of its broad discretion, "the court has liberally construed the pro se plaintiff's opposition papers and the evidence in the record in a light most favorable to the non-

moving pro se party."  Urena v. Yan Wolfson, M.D., No. 09-CV-01107, 2012 WL 958529 at *2
n. 4 (E.D.N.Y. Mar. 20, 2012).  Plaintiff's pro se status, however, "does not allow him to rely on
conclusory allegations or unsubstantiated speculation to overcome a motion for summary
judgment."  Almonte v. Florio, No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13,
2004).

**C.  Standard for Section 1983 Claims**

Section 1983 provides a remedy for constitutional deprivations occasioned by state actors.
To maintain a Section 1983 claim, the plaintiff must establish that the conduct complained of: (1)
was committed by a person acting under color of state law; and (2) deprived the plaintiff of rights,
privileges, or immunities secured by the United States Constitution or laws of the United States.
See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).  When a plaintiff asserts a Section 1983
claim against a municipal defendant, plaintiff must also demonstrate that the constitutional
deprivation "resulted from a municipal custom or policy."  Ricciuti v. N.Y.C. Transit Auth., 941
F.2d 119, 122 (2d Cir. 1991).  Municipal liability is "an extension of liability, not an independent
cause of action, and therefore requires an underlying constitutional violation."  Soto v. City of
New York, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing Segal v. City of New York, 459 F.3d
207, 219 (2d Cir. 2006)).

Plaintiff alleges that he was denied access to the courts in violation of his Fourteenth
Amendment rights and that defendant C.O. Saeed retaliated against him in violation of the First
Amendment.  (See Compl. generally.)  He further alleges that Nassau County is liable for the acts
of C.O. Saeed pursuant to Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978).  Id.

As plaintiff fails to establish that his constitutional rights were violated, the Court grants defendants' summary judgment.[5]

**1.  Access to the Courts Claim**

Plaintiff claims that defendants violated his right of access to the courts by denying him access to the law library in violation of his due process rights.

Defendants contend that plaintiff was provided sufficient access to the law library and that, in any event, plaintiff has failed to demonstrate an actual injury.  The Court agrees.

a.  Standard

"It is well established that all persons enjoy a constitutional right of access to the courts." Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).   "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." Brisco v. Rice, No. 11-CV-0578, 2012 WL 253874, at *5 (E.D.N.Y. Jan. 27, 2012) (quoting Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986).  In order to comply with prisoners' constitutional rights of access to the courts, prisons must furnish prisoners with "adequate law libraries or adequate assistance from persons trained in the law." Lewis v. Casey, 518 U.S. 343, 356 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977).)   "However, the Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner [and] [p]rison officials may impose reasonable restrictions on the use of a prison law library." Oliver v. Head Sheriff of Dep't & Div. of Corr. of Nassau Cnty., No. 07-CV-4355, 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008) (citing Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987) (exercise of right of access to courts may be "shaped and guided by the state but cannot be obstructed");

---

[5]  Because the Court is granting summary judgment in defendants' favor on the merits, the Court finds it unnecessary to address defendants' request for summary judgment on qualified immunity grounds.  (See Defs. Mot. at 16-17.)

Jermosen v. Coughlin, No. 89-CV-1866, 1995 WL 144155 at *4 (S.D.N.Y. Mar. 30, 1995) ("Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right.").

To survive a motion for summary judgment on an access to courts claim based on denial of law library access, the plaintiff must present evidence that: "(1) the defendants acted deliberately and maliciously; and (2) that he has suffered actual injury." Guarneri v. Hazzard, No. 06-CV-985, 2010 WL 1064330 at *21 (N.D.N.Y. Mar. 22, 2010) (citing Lewis, 518 U.S. at 351-54.).  "In order to satisfy the actual injury requirement, the plaintiff must show that, by denying plaintiff access to the law library, prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 to vindicate basic constitutional rights." Bilal v. New York State Dep't of Corr., No. 09-CV-8433, 2010 WL 2506988, at *12 (S.D.N.Y. June 21, 2010) (citing Lewis, 518 U.S. at 354-55) (internal quotations omitted); accord, Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("To state a claim for denial of access to the courts[,] . . . a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.") (internal quotations omitted).  Where a plaintiff cannot articulate any actual injury as a result of defendants purported efforts to prevent him from litigating his case, his access claim cannot survive scrutiny. See Odom v. Kerns, No. 99-CV-10668, 2002 WL 31059341, at *4 (S.D.N.Y. Sept. 16, 2002).

b.  Analysis

Plaintiff claims that his constitutional rights were violated when he was denied additional hours in the law library in accordance with Judge Carter's "orders."  Even assuming, for purposes

of the instant motion, that defendants intentionally denied plaintiff access to the law library, plaintiff has not submitted evidence that he sustained any actual injury.[6]

Plaintiff alleges that he suffered a "[d]eprivation of knowledge of law, los[s] of filing timely and accurate motions, [and] los[s] of raising relevant and timely arguments." (Compl. at 11.) Such "vague and conclusory allegations" are insufficient to plead that plaintiff suffered an actual injury as a result of defendants' actions. Gunn v. McNeil, No. 19-CV-11821, 2020 WL 7647422, at *5 (S.D.N.Y. Dec. 23, 2020) ("[P]laintiff does not allege which specific, nonfrivolous legal challenges were affected by the named defendants' actions; which particular deadlines, if any, he missed due to such actions; or what specific documents, such as motions or pleadings, he was prevented from filing."); Amaker v. Kelley, No. 01-CV-877, 2009 WL 385413, at *10 (N.D.N.Y. Feb. 9, 2009) (Although plaintiff alleged that he missed a court deadline due to denial of library access, plaintiff did not satisfy the actual injury requirement because plaintiff "failed to offer any specifics . . . and to adduce proof from which a reasonable factfinder could conclude that he did indeed experience prejudice by virtue of defendants' failure to provide him with library access."), aff'd 399 F. App'x (2d Cir. 2010). See also Williams v. City of N.Y., No. 19-CV-3347, 2022 WL 130409, at *20-21 (S.D.N.Y. Jan. 14, 2022) (granting summary judgment where plaintiff failed to allege he suffered an actual injury from lack of access to the prison's law library).

In his opposition to defendants' motion, plaintiff argues that "[d]ue to the incompetencies of the NCCC Law Library workers, the pro se [plaintiff] was forced to procced to trial without the legal claim of witnesses for his defense," and was therefore "left with very little options and was caused to negotiate in the middle of trial [ ] for a sentence of 9 years." (Pl. Opp. at 6.) More

---

[6] Because the Court finds that plaintiff fails to demonstrate an actual injury as required to state an access to court claim, it need not determine whether or not Judge Carter's handwritten notations regarding additional time in the law library constitute "orders" for the purpose of this motion.

specifically, plaintiff contends that he was injured because he ended up submitting pre-trial subpoenas in the wrong form to the court.  (<u>See</u> Pl. Ex. H8 at 11; Pl. Dep. 61:6-62:7.)

According to plaintiff, he wanted to subpoena defense witnesses to appear at his trial, however, an inmate, working as a clerk in the law library had incorrectly given him a subpoena for witness statements.  (<u>Id.</u>)  During a pre-trial proceeding on November 5, 2014, Judge Berkowitz explained to plaintiff that though the subpoenas he had prepared were "in the wrong form," nonetheless, he was, in any event,  unable to subpoena defense witnesses in order to cross-examine them.  (Pl. Ex. H8 at 11.)  Judge Berkowitz, however, did sign the subpoena for the records plaintiff requested.  (<u>Id.</u>)

This does not constitute a cognizable injury for purposes of plaintiff's access to courts claim.  First, this purported injury does not even stem from plaintiff being denied access to the law library.  Instead, plaintiff is arguing that he was injured because a clerk in the law library gave him the wrong form.  However, incorrect advice from a clerk does not constitute an unconstitutional denial of access to the courts.  Second, plaintiff has not established that he was denied access to the law library during the specific time period in question and, even if he had, as explained above, this injury was the result of a clerk error and was not a result of plaintiff being denied access to the law library.  Third, plaintiff has not established that the use of this incorrect form prejudiced him at trial.  The Court cannot even discern what exactly happened at this pretrial conference because plaintiff has not provided a complete transcript.  (<u>See</u> Pl. Ex. H8.)  The excerpt of the transcript that plaintiff has provided suggests that plaintiff was attempting to subpoena witnesses who were going to be called by the prosecution and, thus, could already be questioned on cross-examination during the prosecution's case.  (<u>See</u> <u>id.</u>)  Plaintiff has also not even identified the potential

witnesses at issue.  Thus, the evidence in the record fails to show that plaintiff suffered an injury as a result of his submission of subpoenas in the incorrect form.

Moreover, even where an inmate's ability to litigate effectively may be impeded, that is insufficient to demonstrate actual injury when the inmate was still able to present his claim to a court.  Lewis, 518 U.S. at 354 ("[T]he injury requirement is not satisfied by just any type of frustrated legal claim."); see Brisco, 2012 WL 253874, at *5 ("Impeding plaintiff's ability to litigate effectively does not constitute a denial of the right of access to the courts.")  Rather, the inmate must show that he was unable to file the initial complaint, or that the complaint he filed was dismissed for "failure to satisfy some technical requirement" due to deficiencies or inadequacies in the prison's legal assistance facilities."  Lewis, 518 U.S. at 351.  The injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at 355. (emphasis in original).  Thus, as plaintiff has not demonstrated that he was prevented from pursing a particular legal claim, no reasonable fact finder could conclude that plaintiff suffered an actual injury.

To the extent that plaintiff claims that his conviction and nine-year sentence are his injuries, his claim also fails because it is barred under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Id. ("A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has not been so invalidated is not cognizable under § 1983."); see Gilmore v. Smith, No. 9:17-CV-1349, 2019 WL 3948074, at *7-8 (N.D.N.Y. July 22, 2019) ("any judgment finding Plaintiff's First Amendment right to access the courts was violated would necessarily call into question the state court proceedings that rendered and affirmed his conviction,

[and would therefore] also be barred by the <u>Heck</u> doctrine.") (citing <u>Mancuso v. Hynes</u>, 379 F. App'x 60, 61 (2d Cir. 2010).[7]  Therefore, because plaintiff's conviction has not been invalidated, his right to access the courts claim is barred by  <u>Heck</u>.

Finally, it is undisputed that at all relevant times, plaintiff had access to an attorney advisor for legal assistance, even after electing to proceed <u>pro se</u> in December 2013.  (Pl. Dep. 71:13-17.) "The Second Circuit has previously indicated the involvement of standby counsel is sufficient to protect an inmate's access to the courts."  <u>Gilmore</u>, 2019 WL 3948074, at *6 (finding <u>pro se</u> prisoner's access to court-appointed standby counsel "negat[ed] his claim that Defendants unconstitutionally denied him access to the courts") (citing <u>Spates v. Manson</u>, 644 F.2d 80, 85 (2d Cir. 1981).  Thus, plaintiff's access to court claim fails for the additional reason that plaintiff had access to a court-appointed attorney advisor while detained at NCCC.

Accordingly, based on the foregoing, defendants are entitled to judgment as a matter of law with respect to plaintiff's Fourteenth Amendment access to the courts claim.

## 2.  **First Amendment Retaliation Claim**

Plaintiff alleges that C.O. Saeed created a "false disciplinary report" on June 17, 2014 "in retaliation for [his] grievant" which he filed on or about May 19, 2014 in which he alleged that "someone had been marking [him] off as refusing [the] law library."[8]  (Compl. at 7-8.)  The Court finds that plaintiff's retaliation claim fails as a matter of law.

---

[7] Notably, the nine-year plea deal that <u>pro se</u> plaintiff negotiated was considerably more favorable than the thirteen-year plea offer he received when he was represented by an attorney.  Additionally, plaintiff has not appealed his conviction. (<u>See</u> Pl. Dep. 21:13-22:10, 63:13-14.)

[8] Plaintiff received two disciplinary tickets from C.O. Saeed, the first was issued on August 30, 2013, prior to his filing of any grievances, and for which he accepted responsibility without appeal. (Ben-Sorek Decl., Ex. E.)

a.  Standard

To prevail on a First Amendment retaliation claim under Section 1983, a plaintiff must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citation omitted).  "The Second Circuit has cautioned that retaliation claims by prisoners are 'prone to abuse' as '[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes.'"  Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  Accordingly,  even though "[p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right," courts must examine a prisoner's retaliation claim with "skepticism and particular care."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (internal quotation and citation omitted).  Thus, claims of this nature must be "supported by specific and detailed factual allegations," and not stated in "wholly conclusory terms."  Flaherty, 713 F.2d at 13.

b.  Analysis

In the instant case, plaintiff satisfies the first prong of a retaliation claim as it is well-settled that filing prison grievances is activity protected by the First Amendment. See, e.g., Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004); Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.")

Plaintiff has also met the second requirement—that the prison officials' actions be "adverse" to the prisoner.  In the prison context, whether a retaliatory action is "adverse" depends on whether it would deter a similarly situated prisoner of ordinary firmness from exercising his or her constitutional rights.  Pidlypchak, 389 F.3d at 381.  The Second Circuit has held that the retaliatory filing of false misbehavior reports against a prisoner and his placement in "keeplock" constitutes adverse action.  Id.; see e.g., Washington v. Chaboty, No. 09-CV-9199, 2015 WL 1439348, at *10 (S.D.N.Y. Mar. 30, 2015) ("The filing of the misbehavior report and the disciplinary sanction of 65 days in the [special housing unit] constitute adverse actions that satisfy the second element of a retaliation claim.").  Thus, plaintiff's claim that he received a "false disciplinary report" resulting in his lock down for seventeen days constitutes adverse action because it is the type of action that would deter a prisoner of ordinary firmness from vindicating his constitutional rights through the grievance process.[9]

Plaintiff, however, fails to satisfy the third requirement of a retaliation claim as he has not established a causal connection between the filing of his grievance and the issuance of a disciplinary report resulting in his lockdown.

---

[9]  Contrary to defendants' argument, plaintiff does not have to establish that he was actually chilled in exercising his rights.  As the Second Circuit has explained:

> We have described the essential elements of a First Amendment retaliation claim differently depending on the factual context. Compare Gill, 389 F.3d at 381 (requiring, in the prison context, that the prisoner responded to retaliatory conduct by defendants "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights" (quotation marks omitted)) with Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (requiring that a private citizen, who alleged he was arrested by public officials in retaliation for his unsuccessful campaign to unseat the Village's mayor, show that he was "actually chilled" in exercising his rights (quotation marks omitted)).

See Espinal, 558 F.3d at 128 n. 7.

"An inmate bears the burden of showing that 'the protected conduct was a substantial or motivating factor' in the prison officials' disciplinary decision." Holland v. Goord, 758 F.3d 215, 226 (2d Cir. 2014) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "The defendant official then bears the burden of establishing that the disciplinary action would have occurred 'even absent the retaliatory motivation,' which he may satisfy by showing that the inmate 'committed the . . . prohibited conduct charged in the misbehavior report." Id. (quoting Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (internal quotation marks omitted). In evaluating whether a plaintiff has established the necessary causal connection of a retaliation claim, "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." Sharif v. Poole, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010) (citing Colon, 58 F.3d at 872-73).

Plaintiff alleges that on or about May 19, 2014, after discovering that "someone [had] been marking [him] off as refusing law library," he filed a grievance which stated that "housing officers or the law library officers" were "obstructing [his] court order" by refusing his access to the law library. (Compl. at 7; Pl. Dep., Ex. A at 107.) He claims that following his grievance he was getting called to the law library late and was required to leave twenty to thirty minutes early. (Compl. at 7.) On June 5, 2014, plaintiff informed C.O. Saeed that he was not getting his two-hour period in the law library to which he allegedly responded, "that's right because you are not going to be come down here when you want," and "[I] don't give a dam[n] about a Court order." (Compl. at 7-8.) Approximately one month after filing his grievance, on June 17, 2014, plaintiff

purportedly received a "false disciplinary report" from C.O. Saeed for refusing to obey a direct order for which he received seventeen days of lock down.  (Id. at 8; Ex. F.)

Aside from the near four-week proximity between the filing of plaintiff's grievance and his disciplinary infraction, plaintiff has not proffered any evidence supporting his claim that C.O. Saeed took disciplinary action against him because of his grievance.  "Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment."  Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000); see also Gill v. DeFrank, No. 98-CV-7851, 2000 WL 270854, at *16 (S.D.N.Y. 2000) (collecting cases).  C.O. Saeed was not specifically named in plaintiff's May 2014 grievance and his comments to plaintiff fail to demonstrate a retaliatory motive.  Cf. Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (refusing to find a disciplinary report retaliatory where the defendant was not named in plaintiff's original grievance).  "Simply adding an allegation that [defendants] acted out of retaliatory motives is easy to do, but it is not enough."  Dolberry v. Levine, 567 F. Supp. 2d 413, 420 (W.D.N.Y. 2008).

Additionally, the record does not show that plaintiff has a prior good disciplinary record or that he was vindicated at the disciplinary hearing.  Plaintiff's sanction was upheld following a hearing and an appeal.  (See Ex. F.)  The fact that C.O. Saeed issued plaintiff a disciplinary ticket for similar misconduct prior to plaintiff filing any grievances further weighs against an inference of retaliation here.

Finally, plaintiff's evidence fails to create a factual question on the issue of whether C.O. Saeed's allegations against him were false.  Plaintiff's Complaint asserts, in conclusory fashion, that the disciplinary report was "false," but the Complaint is unsigned and, in any event, provides

no particulars about plaintiff's conduct on the day in question to dispute C.O. Saeed's allegations. At his deposition, plaintiff admitted that he did, in fact, "point[ ]" to the other inmate in question and spoke to him.  (Pl. Dep. 66:2-5, 67:9-11.)  That is largely consistent with C.O. Saeed's allegation in the disciplinary report, which states:  "I witness inmate Christian . . . communicating with I/M Speaks . . through the window.  During which time I saw Speaks motion with his hands to I/M Christian and pointed to the door and the inmate who was sitting beside him."  (Ex. F at 2.) Additionally, plaintiff never squarely denies, in either his Complaint or his deposition testimony, that he initially refused C.O. Saeed's two orders to leave, which was one of the grounds for the disciplinary report and plaintiff's ultimate sanction.  A reasonable juror could not conclude from this evidence that C.O. Saeed's allegations were false and motivated by retaliation.

Ultimately, plaintiff's conclusory assertions regarding defendants alleged retaliatory motivations are insufficient to demonstrate the requisite causal connection for a retaliation claim. See  Ross v. Koenigsmann, No. 14-CV-1321, 2016 WL 11480164, at *17 (N.D.N.Y. Sept. 8, 2016) ("[The] [p]laintiff's sole evidence that the misbehavior report was issued in retaliation for his [protected activity] is temporal proximity. [The] [p]laintiff does not allege that [the defendant] made any statements regarding her motive for issuing the misbehavior reports, nor is there any evidence that the misbehavior reports were dismissed.  A retaliation claim based on such thin evidence may fail at summary judgment."), report & rec. adopted by 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016).  Thus, even viewing the record in the light most favorable to plaintiff, there is insufficient evidence of retaliatory motive.  Accordingly, because plaintiff has failed to present sufficient evidence of retaliation, defendants' motion for summary judgment on plaintiff's First

Amendment retaliation claim is granted. [10]

### 3. **Monell Claims**

Plaintiff's Monell claims concerning the conduct of both C.O. Saeed and C.O. Condell also fail.  It is well-established that a municipality, such as Nassau County, may be liable under Section 1983 only if the "plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); see also Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).  To establish the existence of a municipal policy or custom, the plaintiff must establish  (1) the existence of a formal policy officially endorsed by the municipality, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the municipal employees.  Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002). Plaintiff's Monell claims concerning the conduct of both C.O. Saeed and C.O. Condell fail because the record does not contain evidence from which a reasonable jury could find that the officers' alleged violations of plaintiff's rights were the result of a policy, practice, or custom of Nassau County.  Plaintiff's Monell claims also fail because plaintiff has not established any underlying constitutional violations.  Accordingly, the County is entitled to summary judgment on plaintiff's Monell claims.

---

[10] Plaintiff's Complaint also references a disciplinary ticket that he received from C.O. Condell on July 31, 2014.  (Pl. Ex. F6 at 6.)  However, aside from stating that C.O. Condell is C.O. Saeed's partner, (Compl. at 4), plaintiff does not offer any evidence that this infraction was issued in retaliation for filing any grievance.  Notably, like his June 14, 2014 disciplinary infraction, this disciplinary violation was upheld following a hearing and an appeal.  (Pl. Ex. F6 at 7.)  Moreover, C.O. Condell is not a named defendant and there is no evidence that C.O. Saeed was involved in the July 31, 2014 disciplinary ticket.  And, as discussed infra, plaintiff does not have any viable Monell claim against Nassau County.

**4. Minimum Standards Claim**

To the extent plaintiff alleges that defendants violated New York Minimum Standards and Regulations for Management of County Jails and Penitentiaries (the "Minimum Standards"), N.Y. Comp. Codes R. & Regs. tit. 9, § 7031.4, by not allowing him access to the law library (see Compl. at 10, 12), this claim is not cognizable under Section 1983.  "As a general matter, there is no federal right to have state law properly administered."  Ramirez v. Holmes, 921 F. Supp. 204, 208 (S.D.N.Y. 1996).  "[A]n official's failure to follow a prison directive does not constitute a violation of a prisoner's federal constitutional rights."  Kruppenbacher v. Annucci, No. 20-CV-0110, 2021 WL 412281, at *3 (S.D.N.Y. Feb. 3, 2021) (citing Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2013); see also Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. Nov. 6, 2002) ("Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim.")  Absent some further allegations, the failure to comply with prison regulations does not state a claim under Section 1983.  Accordingly, this claim is dismissed.

## III.    CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion for summary judgment and DISMISSES all of plaintiff's claims with prejudice.

Although plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the <u>pro</u> <u>se</u> plaintiff and mark this case closed.

**SO ORDERED.**

Dated:  February 23, 2022
Central Islip, New York

**/s/ (JMA)**
Joan M. Azrack
United States District Judge